UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re                                                                      Chapter 11

HAPPY WAVE LLC,                                              Case No.: 14-74389 (REG)

                                              Debtor.
--------------------------------------------------------------X

## DECISION AND ORDER

**(Denying Debtor's Objection to Claim of BSI Mortgage V LLC and
Request to Surcharge the Collateral for Expenses of Preservation of Collateral and
for Loss of Rents – Docket No. #52)**

Before the Court is the Debtor's *Objection to Claim of BSI Mortgage V LLC ("BSI") and Request to Surcharge the Collateral for Expenses of Preservation of Collateral and Surcharge of Rents* [Docket No. 52] (the "Objection"). The Objection was opposed by BSI, and an evidentiary hearing was held on November 3, 2015. Mr. Yonel Devico, a principal of BSI, testified at the hearing, and Debtor's exhibits A through G were admitted into evidence, as well as BSI's exhibit 1. For the reasons that follow, the Objection is denied.

### Facts

In June 2007, Happy Wave LLC (the "Debtor") obtained a construction loan from Ponce De Leon Federal Bank ("PDL") – BSI's predecessor-in-interest – in the principal amount of $499,000 to fund the construction of a single family residence located at 900 Mayfield Road, Woodmere, New York (the "Property"). The note and mortgage evidencing the construction loan were duly filed with the Nassau County Clerk's office. On April 6, 2009, the mortgage was modified by agreement between PDL and the Debtor to reduce the interest rate through March 2011 from 9% to 7.5% (the "Modification"). The Modification was never filed with the County Clerk's office.

1

Sometime in 2012, PDL commenced foreclosure proceedings against the Debtor. On March 7, 2014, the mortgage, note and all causes of action held by PDL were assigned to BSI. On March 11, 2014, a referee appointed in the foreclosure action determined that, as of February 28, 2014, there was due and owing on the PDL note a total of $698,792.46, including $499,000 principal, plus $101,151.53 interest from July 1, 2011 to February 28, 2014 at 9% interest, plus escrow, taxes and fees (Ex. B). BSI was subsequently substituted in for PDL as plaintiff in the foreclosure action.

On June 18, 2014, BSI obtained a judgment of foreclosure (the "Judgment") against the Debtor in the Supreme Court of the State of New York, County of Nassau (the "State Court"). On July 3, 2014, the State Court entered an order evidencing the Judgment, which provided a judgment amount of $698,792.46 – adopted from the referee's report – with interest at the statutory rate. On July 16, 2014, the Judgment was recorded with the Nassau County Clerk's Office.

On September 24, 2014, the Debtor filed a Chapter 11 bankruptcy petition (the "Petition Date"), and stated an intention to market and sell the Property to pay creditors. While the bankruptcy was pending, in December 2014, the Debtor received an offer to rent the Property for $5,500 per month for a six month term, for a total of $66,000.[1] The Debtor sought BSI's consent to the rental and BSI declined. According to BSI, it declined consent because the proposed rental would burden the Property and chill potential bidding. At no time did the Debtor seek Court approval of the proposed rental.

On December 15, 2014, BSI filed a timely proof of claim asserting a pre-petition secured claim in the total amount of $729,916.62. The proof of claim was calculated as follows: $499,000

---

[1]    The Debtor seems to have miscalculated here. $5,500 per month for a six month term would total $33,000, not $66,000. The mistake is irrelevant considering the Court's denial of the Debtor's motion.

unpaid principal, $123,608.44 interest from July 1, 2011 to Petition Date at 7.5%, plus late charges, fees and escrow.

The Property was sold at auction on May 13, 2015 for $840,000. Two days prior to auction, on May 11, 2015, the Debtor filed the instant Claim Objection [Docket No. 52] arguing: (1) BSI's lien should be subordinated to the rights of the debtor-in-possession as a judgment lien creditor and bona fide purchaser for value, pursuant to § 544; (2) BSI should be surcharged the expenses of preservation and disposition of the collateral; (3) BSI should be surcharged $66,000 for its refusal to permit the Property to be rented; and (4) the Court should apply a market rate of interest to BSI's secured claim.

The Debtor's argument, in sum, is that BSI failed to disclose the Modification (and the reduction of interest from 9% to 7.5%) to the State Court prior to obtaining the Judgment. As a result, the Judgment was improperly obtained and an improper interest rate was applied. Alternatively, the Debtor also argues that the interest rate on the Judgment should be reduced to the Federal Rate as of the Petition Date, not the (state) statutory rate. All of this, Debtor argues, should result in the subordination of BSI's secured claim to the administrative and unsecured claims.

**Subordination**

The Debtor argues that the Modification was not properly filed in accordance with section 22 of the New York Lien Law, and as a result BSI's lien is subordinate to the Debtor's status, under § 544, as a judicial lien creditor and bona fide purchaser for value. 11 U.S.C. § 544.

The Debtor's argument concerning the Modification misses the point. The subsequent entry of the Judgment – the validity of which has not been challenged here or, to this Court's

knowledge, in State Court – precludes this Court from entertaining any argument that the underlying loan Modification was not properly filed.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The strong arm provisions of § 544 do not give the Debtor the power to subordinate the lien of a party holding a valid, properly-recorded judgment of foreclosure. *See In re Cerrato*, 504 B.R. 23, 32 (Bankr. E.D.N.Y. 2014) (Craig, C.J.).

## 506(c) Surcharge

The Debtor's counsel also argues that it performed a variety of services, including marketing and sale of the Property, significantly and primarily for the benefit of BSI and, accordingly, BSI's secured claim should be surcharged pursuant to § 506(c) in order to pay the Debtor's professionals' fees from the proceeds of the sale.  The Debtor's arguments fails on this point as well.

Section 506(c) provides that a "trustee [debtor-in-possession] may recover from the property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c); *In re Ceron*, 412, B.R. 41, 52 (Bankr. E.D.N.Y. 2009).

Here, the Debtor has failed to produce any evidence to establish that the fees and expenses associated with marketing and selling the Property in bankruptcy, and payment of taxes and insurance were primarily and directly for the benefit of BSI.  To the contrary, this bankruptcy case was filed solely to forestall BSI's foreclosure efforts and attempt to create equity from the Property in the context of a chapter 11 liquidation – such equity intended to be for the sole benefit of the Debtor.  The Debtor has produced no evidence to show that BSI fared any better as a result of the

bankruptcy auction than it would have in the context of the pending non-bankruptcy foreclosure. Nor has the Debtor shown that BSI consented to the payment of the administrative expenses of the bankruptcy sale out of its secured claim over and above those expenses already authorized by the Order approving the sale of the Property, dated June 15, 2015 ("Sale Order") [Dkt #64]. *See In re Codesco*, 18 B.R. 225 (Bankr. S.D.N.Y. 1982).

The Sale Order authorizes certain administrative expenses to be deducted and paid from the net proceeds of sale ahead of BSI's lien. Specifically the Order authorized: (a) $27,730 fees and expenses of the auctioneer (subject to application and approval by the Court), (b) Debtor's attorney's fees associated with the sale of the Property in the amount of $26,879 (subject to application and approval by the Court), (c) $3,500 real estate counsel (subject to application and approval by the Court), (d) real estate taxes, and (e) "any other expenses which are necessary and required to effect the Closing." (Sale Order at 6). . The Order provides that BSI's lien attaches "to the net proceeds of sale after payment" of these enumerated expenses. (Sale Order at 3). The Order also provides that $500,000 be paid to BSI and any excess sale proceeds remain in escrow with either the Debtor's counsel or the title insurance company

On November 11, 2015, Debtor's counsel docketed a Statement Regarding Status of Account Balances of Debtor ("Statement"). The Statement indicates that Debtor's counsel is asking that the following ***additional*** amounts be paid out of the proceeds of sale: (1) $30,000 to Debtor's counsel for fees in connection with the bankruptcy case; (2) $2,000 in fees to real estate counsel due to the complexity of the case; (3) $7,000 to pay a "Potential Judgment/Liability" of $47,374.71 (for which the title company has set aside $71,062.07 as a reserve); (4) $6,500 for United States Trustee fees; and (5) $3,303.02 property insurance. In addition, according to the Statement, real estate taxes to be paid out of sale proceeds are $70,411.57 (although the title

company set aside $84,083.23 as a reserve for taxes), and title fees and charges for closing total $578. The Court assumes, without deciding, that the taxes and closing fees would be included within the category of "any other expenses which are necessary and required to effect the Closing" and should be paid ahead of BSI's secured claim in conformance with the Sale Order. However, if the remainder the expenses proposed by the Debtor to be paid out of the sale proceeds are paid, there would be a $67,000 shortfall in payment on BSI's secured claim as filed.

The Court finds that the administrative expenses specifically mentioned in the Sale Order, and those items listed in the Statement that were "necessary and required to effect the Closing" shall be paid out of the sale proceeds ahead of BSI's lien. The Debtor's request to further surcharge BSI's collateral pursuant § 506(c) is denied.

## Surcharge of $66,000 for Refusal to Accept a Potentially Rent Paying Tenant

The Debtor argues that BSI should be "surcharged" $66,000 for its bad faith refusal to consent to the Debtor's proposed rental of the Property. However, the Debtor has not shown that BSI was legally obligated to consent; nor has the Debtor shown that BSI had the legal authority to approve the rental of the Property; nor has the Debtor shown that BSI acted in bad faith in withholding its approval. In BSI's business judgment, renting the Property would depress the value of the Property and chill bidding at the impending auction sale, thereby offsetting any benefits of the collected rent. Accordingly, the Debtor is not entitled to surcharge BSI in any amount for rent that may have been collected at the Property.

## Interest

The Debtor implies that there was some nefarious intent behind BSI's failure to rely on the $698,792.46 Judgment amount in calculating its claim. The Debtor argues that the referee

improperly calculated interest at 9% in coming to the $698,792.46 Judgment amount and that this somehow taints the Judgment. However, as previously stated, the Judgment has not been appealed and it is not for this Court to look behind it.

At the same time, the Debtor argues that BSI's claim should have been calculated using an appropriate market interest rate, or the 7.5% interest rate imposed by the Modification, and not a statutory judgment rate of interest (9%). However, BSI did not calculate pre-petition interest using 9%. According to the attachments to the BSI claim, the total pre-petition claim of $729,916.62 includes 7.5% interest on the unpaid principal amount of the note ($499,000) from July 1, 2011 to the Petition Date, plus late charges, legal fees, collection fees and escrow. If BSI had calculated its pre-petition claim using the Judgment amount plus the 9% statutory judgment rate to which it was entitled, the claim would have ***exceeded*** the amount of the BSI claim as filed. Therefore, it is against the Debtor's interest to argue that BSI should have calculated the claim based on the Judgment.

To the extent that the Debtor is arguing that the "federal rate" should supplant the 9% statutory judgment rate as of the Petition Date, the Court notes that the BSI claim to which the Debtor has objected is a pre-petition claim, and there has been no issue raised yet as to BSI's claim, if any, to post-petition interest.

Finally, the Debtor seems to suggest that the BSI claim should be reduced due to the fact that it purchased the debt from PDL at a discount. However, the Debtor's obligations under the note and mortgage are not altered by the sale of the debt at a discount. The Debtor did not present any persuasive legal argument, nor can the Court find one, to explain why BSI, a secured creditor, should be compelled to accept less than 7.5% contract rate of interest on its pre-petition secured judgment.

Accordingly, the Debtor's Objection to BSI's claim is denied in its entirety.

SO ORDERED.



**Dated: Central Islip, New York**
**November 25, 2015**

                          **Robert E. Grossman**
             **United States Bankruptcy Judge**